821 So.2d 1189 (2002)
Antonio MOCEGUI f/k/a Antonio Perez as parent, legal guardian and next best friend of Anthony Mocegui f/k/a Anthony Perez, a minor, Appellant,
v.
PUBLIC SERVICE MUTUAL INSURANCE COMPANY, a foreign corporation, P & C Insurance Systems, Inc., a Florida corporation and Pablo Conde, Appellees.
Nos. 3D01-2153, 3D01-2317.
District Court of Appeal of Florida, Third District.
July 24, 2002.
*1190 Friedman & Friedman, Coral Gables; Hersch & Talisman and Patrice A. Talisman, Miami, for appellant.
Lord, Bissell & Brook and Nick J. DiGiovanni and Hugh S. Balsam, Chicago, IL; O'Connor, Chimpoulis, Restani, Marrero & McAllister and Roger G. Welcher and David R. Cassetty, Coral Gables; and John R.W. Parsons, Miami, for appellees.
Before SCHWARTZ, C.J., COPE and SORONDO, JJ.
PER CURIAM.
Antonio Mocegui (Mocegui) appeals the trial court's non-final order on Public Service Mutual Insurance's (PSM) motion to correct and amend final judgment and the trial court's non-final order on Mocegui's amended motion to amend final judgment and/or for supplemental, incidental relief. PSM cross-appeals the trial court's amended final judgment. We consolidate the cases for purposes of this opinion.

FACTS
On June 6, 1991, Anthony Mocegui, a three and one-half year old slipped on a puddle at Riviera Rental Apartments (Riviera) and sustained a serious head injury. Riviera was owned by a holding company, Developmental Properties. Antonio Mocegui, as parent and legal guardian of Anthony Mocegui, gave notice of the accident to Riviera and Development Properties and brought suit. Developmental Properties had two insurance policies; an underlying policy written by Insurance Company of Florida (ICF) affording primary coverage of one-million dollars and a catastrophe umbrella liability policy written by PSM with limits of two-million dollars. The named insured on the ICF policy was Riviera and the named insured on the PSM policy was Developmental Properties.[1]
ICF went insolvent due to claims from Hurricane Andrew and went into receivership. Florida Insurance Guarantee Association (FIGA) assumed the defense. Mocegui filed a proof of claim with FIGA who hired their own attorneys to defend the lawsuit. Copies of the summons and complaint were forwarded to both FIGA and PSM. FIGA proceeded to defend Riviera until September 1994, when it moved to withdraw on the ground that they did not believe their policy provided coverage for the accident. A trial was held against an empty chair and a jury verdict returned on December 23, 1994, finding that Riviera was liable for Anthony's injuries and awarding damages in the amount of $2,357,725.15. A final judgment (personal injury judgment) was entered on January 3, 1995. The judgment stated that it would bear interest at the rate of twelve-percent per year, with costs. After the personal injury judgment was entered, Mocegui's counsel learned of the existence of the PSM policy.
On March 6, 1995, Mocegui then filed this declaratory judgment action seeking to enforce judgment against FIGA, PSM, P & C and Pablo Conde. In 1998, the lower court granted summary judgment *1191 against FIGA determining that it had coverage for the incident as a matter of law and FIGA paid its limits. The court found that FIGA's limit of liability was three hundred thousand dollars. Suit proceeded against PSM, who defended on the ground that Riviera had violated the terms of its insurance policy by not giving notice of the accident or of the suit. The lower court entered a directed verdict in favor of PSM finding that there was a breach of contract, which resulted in prejudice to PSM. Mocegui appealed the final judgment. This Court reversed and remanded for a new trial finding that jury issues were presented of whether notice was given to the carrier and whether, even if notice was not given, PSM was prejudiced as a result.
The parties agreed to a non-jury trial. On May 16, 2001, the court entered a final judgment (declaratory judgment) finding that PSM was given timely notice of the claim prior to trial.[2] The court concluded that "[PSM] must fulfill its promise and pay the damages minus the setoff figure of the primary insurance amount." The court did not enter an amount of damages on the declaratory judgment. On May 22, 2001, Mocegui moved to amend the May 16, 2001, declaratory judgment to reflect the amount of damages entered against Riviera in the January 3, 1995 personal injury judgment, plus the twelve-percent interest awarded.[3] PSM countered the motion and filed its own motion to correct and amend the January 1995 personal injury judgment to reflect the following statutory interest rates for the years in question; eight-percent for 1995, ten-percent for 1996-2000 and eleven-percent for 2001. PSM also sought to amend the judgment to reflect a credit of FIGA's payment and a different computation of the interest rates owed, where interest was not owed on the one-million dollar setoff. The lower court granted PSM's motion for the judgment to reflect the foregoing statutory interest rates and found that PSM did not have to pay interest on the one-million dollar setoff. Mocegui appealed the order granting PSM's motion to correct and amend the personal injury judgment and the order on Mocegui's amended motion to amend the declaratory judgment, arguing that (1) the lower court acted outside its jurisdiction in amending the personal injury judgment six years after it had been entered and (2) that the lower court erred in limiting PSM's liability for payment of interest on the first million dollars of the personal injury judgment. We agree with Mocegui on both points and reverse. PSM cross-appealed the declaratory judgment alleging that the lower court's ruling that PSM received notice of Mocegui's claim prior to trial was against the manifest weight of the evidence. We disagree and affirm on the cross appeal.

ANALYSIS

I. Jurisdiction
The trial court did not have jurisdiction to amend the personal injury judgment six years after it was entered. A trial court's authority to modify, amend, or vacate an order or final judgment after *1192 rendition of the final judgment is limited to the time and manner provided by rule or statute. Francisco v. Victoria Marine Shipping, Inc., 486 So.2d 1386, 1388-89 (Fla. 3d DCA 1986)(citing Shelby Mut. Ins. Co. v. Pearson, 236 So.2d 1 (Fla.1970)). The Florida Rules of Civil Procedure provide two mechanisms, rule 1.530 and rule 1.540, by which a trial court can reconsider and correct its prior decision. Francisco, 486 So.2d at 1389. PSM did not move to amend the persons injury judgment pursuant to either of these rules. However, even if they had, PSM would still not be entitled to relief as both motions would have been untimely.
Under rule 1.530(g), parties may move for a motion to alter or amend a judgment, however, the motion shall be served no later than ten days after the filing of the judgment. "The trial court thereafter loses jurisdiction except to enforce the judgment and except as provided by Florida Rule of Civil Procedure 1.540." Id. Because PSM did not file a motion to alter or amend the final judgment within ten days of the January 1995 personal injury judgment, the trial court lost jurisdiction to alter or amend the judgment under rule 1.530. Tompkins v. Kraemer, 402 So.2d 35 (Fla. 3d DCA 1981).
The second mechanism, rule 1.540, provides an additional procedure where the trial court can reconsider and correct its prior decision. Rule 1.540(a) provides that clerical mistakes may be corrected at any time on the court's initiative or by motion of any party. PSM does not allege nor do we believe that this was a clerical mistake. See Clearwater Oaks Bank v. Plumtree, 477 So.2d 1023, 1024 (Fla. 2d DCA 1985)(remedies under rule 1.540(a) do not apply to motions seeking a substantive change or motions seeking to correct judicial errors). PSM is also not entitled to relief under rule 1.540(b). This rule provides that the court may relieve a party from a final judgment for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing; (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) when the judgment is void; or (5) when the judgment has been satisfied, or discharged by a prior judgment. PSM did not move for relief on any of these grounds. See Youth For Christ of Sarasota, Inc. v. Sarasota County, 765 So.2d 794 (Fla. 2d DCA 2000)(trial court lacked jurisdiction to modify final judgment where county did not move for relief under 1.530(g) or 1.540(b)). Furthermore, a motion under rule 1.540(b) shall be made within a reasonable time, and for reasons (1),(2) and (3) not more than one year after the judgment was entered. Fla. R. Civ. P. 1.540(b). PSM did not move to set aside the personal injury judgment within one year after the judgment.[4] We conclude that the trial court did not have jurisdiction to alter and amend the interest rates from the January 1995 final judgment six years after judgment was entered.

II. Liability
Mocegui also asserts that the trial court erred in limiting PSM's liability on the interest of the personal injury judgment. We agree. The express language of the insurance policy requires the insurance *1193 company to pay all the accrued interest, including the interest on the underlying judgment. The policy provides that:
We [PSM] will pay, in addition to the applicable limit of liability:(1) all expenses incurred by us, all costs taxed against the insurer in any suit defended by us and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before we have paid or tendered or deposited in court that part of the judgment which does not exceed the limit of our liability thereon.
(Emphasis added). The insurer did not restrict the payment of interest accrued to only the amount of damages that exceed primary coverage. See Highway Cas. Co. v. Johnston, 104 So.2d 734, 736 (Fla.1958)(liability insurer liable for interest on full amount of judgment where insurer obligated itself under policy to pay all interest accruing after entry of judgment); Graber v. Clarendon Nat'l Ins. Co., 819 So.2d 840, 843 (Fla. 4th DCA 2002)(where insurer did not restrict policy terms, it must be given the interpretation of providing coverage); Nursefinders of St. Petersburg, Inc. v. Dolan, 619 So.2d 980 (Fla. 2d DCA 1993)(trial court erred in limiting the accrual of postjudgment interest on original final judgment to six months). We interpret the policy language in favor of the insured and conclude that the policy provides that PSM will pay the interest which accrues on the entire judgment up until the time PSM pays their part of the damages awarded. See Berkshire Life Ins. Co. v. Adelberg, 698 So.2d 828, 830 (Fla.1997)("an insurer, as the writer of an insurance policy, is bound by the language of the policy, which is to be construed liberally in favor of the insured and strictly against the insurer.").

III. Cross-appeal
PSM cross-appeals the declaratory judgment alleging that the trial court's finding that PSM had notice was erroneous and against the manifest weight of the evidence. We disagree. A trial court's findings of fact are entitled to the same weight as a jury verdict. Highland Lakes, Inc. v. Art Present Real Estate, Inc., 147 So.2d 348, 349 (Fla. 3d DCA 1962). Therefore, an appellate court will not reverse unless it clearly appears that the judgment of the trial judge is erroneous, his findings are manifestly against the weight of the evidence or contrary to the legal effect of the evidence. Id. Here, the trial court found PSM was provided notice of the claim on four occasions; (1) Carmen Padron informed Mocegui on August 13, 1991 that she had faxed notice to the insurance agent (P & C and D.R. Mertens were the agents); (2) A proof of claim was filed with the State of Florida; (3) Pablo Conde mailed the summons and complaint to PSM in April 1994; and (4) FIGA sent letters to D.R. Mertens on August 23, 1994 and September 16, 1994 seeking information on the policy coverages. The record reflects there was evidence presented at trial that supported all four instances of notice. We cannot say that the trial court's ruling that PSM had notice was erroneous or against the manifest weight of the evidence. Calvert Fire Ins. Co. v. Tarr, 391 So.2d 244 (Fla. 3d DCA 1980); Old Equity Life Ins. Co. v. Levenson, 177 So.2d 50 (Fla. 3d DCA 1965).
Accordingly, we reverse the order granting PSM's motion to amend and alter the interest rate of the January 1995 personal injury judgment. We remand with instructions to enter a judgment to reflect the damages entered in the January 1995 personal injury judgment including the twelve-percent interest rate on the entire judgment. We affirm PSM's cross-appeal.
*1194 Affirmed in part, reversed in part and remanded with instructions.
NOTES
[1] Developmental Properties used Pablo Conde from P & C Insurance Systems to secure insurance for all of its buildings.
[2] P & C and Pablo Conde were also included on the final judgment order, however, the trial court found their conduct did not rise to the level of negligence.
[3] The amount of damages requested included the amount of the January 1995 final judgment which exceeded the primary insurance; interest at twelve-percent on the entire judgment from January 3, 1995 until May 29, 1996, the day FIGA paid its limits; interest at twelve-percent on the total judgment minus the FIGA payment from May 29, 1996 until July 16, 1997, the day Capacity Insurance Company paid a settlement amount of $50,000.00; and twelve percent interest on the remaining amount of the judgment until the judgment is paid.
[4] PSM alleges that they did not receive notice of the claim until after the final judgment was entered. While we agree with the trial court's findings that suggest otherwise, PSM has acknowledged that they received notice of the negligence claim in March 1995. PSM had the ability, even if they did not receive notice until the time they claimed, to move the court to set aside the judgment within a year after judgment was entered.