WELLS, Judge.
Kristina Randall appeals from an order finding her in indirect civil contempt, discharging a contempt order previously entered against her former husband, Stephen Randall, and changing the terms of an earlier order as to the sale of certain property. We reverse this order in all respects.
In June of 2002, the parties’ thirty year marriage was dissolved by a final judgment of dissolution of marriage which incorporated an agreement primarily made in open court. Pursuant to that agreement, Ms. Randall waived alimony “in return for an equitable distribution of the marital estate” which turned out to equal a one half ownership interest in Atlantic Mills, Inc., a company owned by the parties and operated by Mr. Randall during the marriage, and one half of the equity value, then set at $500,000, in a warehouse to remain titled in Mr. Randall’s name.
With regard to Atlantic Mills, Mr. Randall was given until May 2002 (a month before the final judgment) to get that business “in order,” failing which Mrs. Randall was to take over its operation. Although *72 Mr. Randall was ordered to pay child support for the parties’ two minor children, he was permitted to pay it from Atlantic Mills’ funds until that entity was sold. Atlantic Mills’ funds also were to be used, until sold, to pay certain specified loans and business expenses, health insurance for the parties and their children, lease and insurance payments on both Mr. and Mrs. Randall’s cars, disability insurance for the parties, insurance on the warehouse awarded to Mr. Randall, a line of credit with Eastern National Bank and $250 per week in salary to Mrs. Randall. As for the sale of this business, the final judgment provided:
Should a cash offer of Three Hundred Seventy-Five Thousand Dollars ($375,-000.00) or more come in for Atlantic Mills, then neither party may withhold his or her consent to the sale. The Court reserves jurisdiction to determine whether there should be a sale based upon an inferior offer should the parties be unable to agree.
Although the final judgment did not obligate Mr. Randall to sell the warehouse so that Mrs. Randall would receive her distribution by any certain date, it did require the net monthly income from that property ($9600 per month from tenants and leased billboard space, less mortgage, taxes, and maintenance) to be deposited into a joint signatory account and distributed equally between the parties.
The judgment also distributed the parties’ personal debts making Mr. Randall responsible for all personal debts of the parties with the exception of an MBNA credit card, a Neiman Marcus credit card, a direct student loan, and one-half of an outstanding dental bill for which Mrs. Randall was to be “responsible.”
Barely five months after the final judgment was entered, on November 15, 2002, an order was entered finding that Mr. Randall had violated virtually every provision of the final judgment. Specifically, the court found that Mr. Randall failed to pay required private school tuition; that Mr. Randall, while in sole control of Atlantic Mills, had failed to pay Mrs. Randall’s car and disability insurance; and that Mr. Randall had used Atlantic Mills’ funds to pay for an appraisal and the property taxes on his warehouse and to pay for some of his personal expenses. The court also found that contrary to the final judgment, Mr. Randall had negotiated with a lender without Mrs. Randall’s consent and that as a consequence of Mr. Randall’s actions, Atlantic Mills had been rendered essentially valueless:
The Former Husband deliberately undermined the Former Wife’s position in Atlantic Mills, Inc. and set about in a deliberate and destructive manner to squander Atlantic Mills, Inc. revenues and assets prior to the turnover to the Former Wife on June 1, 2002....
The court also noted that Mr. Randall had received an offer to purchase his warehouse for $900,000 and although he was not obligated to sell it, “all financial obligations to the parties still outstanding could be resolved by such sale including any debt on the credit line of Atlantic Mills, Inc. or the outstanding mortgage on the warehouse.” Based on these findings, and the finding that Mr. Randall was “satisfied to earn two hundred fifty dollars ($250.00) a week from Atlantic Mills, Inc. rather than work for another income producing entity,” Mr. Randall was ordered to report to the court within 45 days as to whether he had paid $250,000 to Mrs. Randall or had sold the warehouse:
B. Within forty-five (45) days, the Former Husband shall report to the Court as to either the sale of the Warehouse or the payment of two hundred fifty thousand dollars ($250,000.00) to *73 Ms. Randall in order to purge himself of this Order of willful contempt.
C. If the Former Husband fails to pay the two hundred Sty thousand dollars ($250,000.00) or sale the warehouse in order to raise the money to pay the two hundred fifty thousand dollars ($250,000.00), the Former Husband may be incarcerated for failure to comply with this Order.
Mr. Randall appealed this order. It was, however, affirmed with an award of appellate fees and costs to Mrs. Randall. Randall v. Randall, 875 So.2d 667 (Fla. 3d DCA2004).
On September 13, 2005, a new judge was assigned to this case. Rather than selling the warehouse, Mr. Randall requested permission to refinance it. The court agreed to permit Mr. Randall to refinance the warehouse “provided that the Former Wife shall be paid $250,000 in full, with interest thereon, first, without setoff, from 11/15/02; and provided that the Final Judgment for Appellate Attorney’s Fees and Costs shall likewise be satisfied.” Mr. Randall did not, however, either sell or refinance the warehouse. Nor did he pay Mrs. Randall as repeatedly ordered. Rather, he filed two motions for rehearing in which he sought to set off virtually the entire, if not the entire, $250,000 that he was to pay to Mrs. Randall.[1]
The motions were granted. Contrary to the order of November 15, 2002, affirmed by this court, this order, dated December 12, 2005, found that it was Mrs. Randall’s refusal to accept a $235,000 offer to purchase Atlantic Mills prior to entry of the amended final judgment and not Mr. Randall’s “deliberate and destructive” conduct that caused Atlantic Mills to be lost. Although no basis was found for holding Mrs. Randall in contempt for failing or refusing to sell this business, the court nonetheless concluded that Mrs. Randall’s “refusal to accept the offer to purchase was unreasonable ... and since [Mrs. Randall] was willing to accept zero, zero is exactly what she shall receive by way of this order.” Mr. Randall was relieved of the obligation imposed by the November 15, 2002, order — an order affirmed by this court — to either pay Mrs. Randall $250,000 or to sell his warehouse so that he could pay her for dissipating this asset;
On November 15, 2002, this Court found the former husband in contempt for failing to pay the former wife $250,000.00 despite the fact that the warehouse had not been sold.... This Court now determines that the former husband need not ever sell the warehouse if he so chooses and that he is only obligated to pay the former wife if a sale ever occurs. The contempt finding against the former husband is now discharged.
(Emphasis added).
Mrs. Randall also was held in contempt for failing to pay the debts assigned to her in the final judgment. The order also *74 provided that if Mr. Randall paid these debts, he would be entitled to a set off against the $250,000 that Mrs. Randall was to receive from the sale of the warehouse — assuming, of course, it was ever sold.
We reverse this order in its entirety.
First, the court below erred in holding Mrs. Randall in contempt for failure to satisfy debts to third parties ordered as part of an equitable distribution. See § 61.075, Fla. Stat. (2006) (requiring equitable distribution of marital liabilities). “The enforcement through contempt of debts not involving support violates Article 1, section 11 of the Florida Constitution, the provision prohibiting imprisonment for debt.” See Whelan v. Whelan, 736 So.2d 732, 733-34 (Fla. 4th DCA 1999); Schminkey v. Schminkey, 400 So.2d 121, 122 (Fla. 4th DCA 1981). While there may be “certain circumstances where a former spouse’s payment of credit debts or other debts may be in the nature of support such that payment of those debts may be enforced through contempt,” Whelan, 736 So.2d at 733-34, such is not the case here.
Second, there is no evidence that Mrs. Randall has the current ability to pay these debts.[2]
Third, and with all due respect to the trial judge, the subject of Mr. Randall’s motions for rehearing was the trial court’s previous order requiring Mr. Randall to pay $250,000 to Mrs. Randall without set offs. These motions did not attack the validity of the November 2002 order, which had just been affirmed by this court, obligating Mr. Randall to pay $250,000 to Mrs. Randall. Nor do we see any basis on which that order may now be attacked. Thus, the determination made in the November 2002 order that Mr. Randall dissipated Atlantic Mills entitling Mrs. Randall to immediate payment of $250,000 was not, “up for grabs.” The trial court’s conclusion that this business was lost because Mrs. Randall rejected a purchase offer made before the amended final judgment was entered permitting her to reject any offer under $375,000 (and not because Mr. Randall destroyed this asset) is, therefore, reversed. See Smith v. Smith, 927 So.2d 118, 120 (Fla. 2d DCA 2006) (quoting Sabine v. Sabine, 834 So.2d 959, 960 (Fla. 2d DCA 2003), “when ‘a judgment is not based on an issue that had been framed by the pleadings, noticed for hearing, or litigated by the parties, it may not stand’ because ‘[t]he failure to follow these basic procedural requirements implicates due process concerns.’ ”); see generally Sibley v. Sibley, 885 So.2d 980, 981 (Fla. 3d DCA 2004) (“Since the former husband already appealed the March 4 order and this court already affirmed it, *75 common sense and principles of res judica-ta dictate that the former husband cannot now mount a second appeal of the March 4 order.”); Mocegui v. Pub. Serv. Mut Ins. Co., 821 So.2d 1189, 1191-92 (Fla. 3d DCA 2002) (“A trial court’s authority to modify, amend, or vacate an order or final judgment after rendition of the final judgment is limited to the time and manner provided by rule or statute.”).
Accordingly, the order on appeal is reversed and this matter remanded to enforce the November 15, 2002 order and this court’s mandate for payment of related appellate fees and costs.[3]

. Mr. Randall sought to set off sums equal to the MBNA, Neiman Marcus, and student loans for which Mrs. Randall was made responsible in the final judgment (approximately $40,000); one half of the taxes on the warehouse which he had paid; approximately $405,000 in damages he allegedly incurred because Mrs. Randall had rejected a $235,000 offer to purchase Atlantic Mills before the amended final judgment which provided that neither could be forced to accept an offer of less than $375,000 for this business; the attorneys’ fees he allegedly incurred in responding to a motion that pre-dated the amended final judgment; the attorneys’ fees he allegedly incurred “related to compiling ... creditor authorizations’’ regarding Mrs. Randall’s MBNA, Neiman Marcus and student loan obligations; and the attorneys’ fees he allegedly incurred in seeking to hold Mrs. Randall in contempt for alleged false statements regarding his operation of Atlantic Mills before she took it over.

. Mrs. Randall acknowledged her responsibility to pay the credit cards and student loan, but testified: "Those are my responsibilities. However, I don't have the financial wherewithal to pay those debts.” Mrs. Randall also testified that she had lost the job that she had taken after Atlantic Mills had gone defunct, and that she had begun a new job, testifying:
Q. Are you able to make ends meet?
A. No.
Q. Have you had to borrow money to maintain your household, including your children?
A. Yes.
Q. Have you had the money to pay any of the debts that were assigned to you in the amended final judgment?
A. None.
Q. Have you had to borrow money from your mom to survive?
A. Yes.
Q. Approximately how much?
A. She's still supporting me now and giving me $2,000 a month, but—
Q. Do you have money to pay your attorneys?
A. No.
Q. Do you have money to pay any experts?
A. No.

. While we agree that Mrs. Randall must be paid $250,000 (with interest) by Mr. Randall without set offs now, we see no reason why a portion of these funds (not to exceed $40,000) could not be escrowed or set aside for a reasonable period of time to assure that Mrs. Randall will negotiate and resolve her outstanding obligations to MBNA, Neiman Marcus, and for a student loan. We also find no error in permitting Mr. Randall to refinance the warehouse to pay Mrs. Randall the $250,000 as ordered as long as the costs of the refinancing and any additional monthly charges resulting from an increase in the mortgage debt on the property are not deducted from the net monthly income which is to be equally divided between the parties under the terms of the judgment.